UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INES G. SUAREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>REAL TIME RESOLUTIONS INC., et al.,<br><br>    Defendants. | Case No. 5:23-cv-00391-SSS-SPx<br><br>**ORDER GRANTING THE MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [DKT. 38]** |

Before the Court is a motion to dismiss Plaintiff Ines G. Suarez's Second Amended Complaint ("SAC") filed by Defendants Real Time Resolutions Inc. ("RTR") and Yakte Properties, LLC ("Yakte"). [Dkt. 38]. Suarez opposes. [Dkt. 40, Pl.'s Opp'n ("Opp'n")]. The defendants reply. [Dkt. 41]. The Court has reviewed the parties' arguments, relevant legal authority, record in this case, and heard oral argument on the matter. For the reasons below, the motion to dismiss is **GRANTED**.

I.  BACKGROUND[1]

The SAC is convoluted and woefully falls short of being a model of clarity.  The Court accepts Suarez's allegations as true and construes them in her favor.  *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005).  It does not accept, however, those allegations that are clearly contradicted by the exhibits attached to the SAC.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The Court recites the alleged events as best it understands, and, more importantly, in chronological order.

On February 9, 2007, Plaintiff entered into a Home Equity Line of Credit Agreement and Promissory Note ("HELOC") with Greenpoint Mortgage Funding, Inc. ("Greenpoint").  [Dkt. 33, Second Am. Compl. for Damages ("SAC") Ex. 2].  Under the HELOC agreement, Suarez received a line of credit secured by a deed of trust ("DOT") on her home.[2]  [*Id.* Ex. 4].  The assigned trustee of the DOT was Marin Conveyancing Corp. ("Marin Conveyancing")[3].  [*Id.* at 2].  Under the HELOC agreement, Greenpoint promised to send her monthly statements regarding her outstanding credit balance.  [SAC ¶ 7].  In January 2008, Suarez was unsuccessful in contacting Greenpoint to dispute an advance she claims she did not make.  [*Id.* ¶ 8].  Eight months later, Suarez received a letter from Greenpoint stating that the HELOC agreement had been suspended because the value of her home dropped to $146,100.  [*Id.* ¶ 9].  Suarez continued to make payments until October 2008, [*id.* ¶ 10], when she

---

[1] Any quoted language from the SAC is recited verbatim and includes any grammatical or punctuation errors.
[2] RTR and Yakte request that the Court take judicial notice of the HELOC agreement.  [Dkt. 38-2].  The Court **DENIES** the request because Suarez has already attached the pertinent portions of the HELOC agreement to the SAC.
[3] Suarez refers to Marin Conveyancing as "RRA CP."  [*See, e.g.*, SAC ¶ 35].  The Court will refer to "RRA CP" as Marin Conveyancing to ensure its recitation of the facts accurately reflects the record.

received a second letter from Greenpoint explaining to her that Countrywide will be servicing her loan beginning November 28, 2008, [*id.* Ex. 3]. In November 2008, Suarez contacted Countrywide to obtain a billing statement when she was told that it did not service her loan. [SAC ¶ 11]. Countrywide instead told her that Capital One was servicing her loan.[4] [*Id.*].

More than a year later, in December 2009, Bank of America ("BA") contacted Suarez stating that she owed money on an outstanding debt under the HELOC agreement. [*Id.* ¶ 14]. Based on this letter, Suarez knew that BA was the loan servicer and visited an office located in Indio, CA to inquire about the outstanding amount. [*Id.*]. An unnamed manager "told her not to worry about her credit as in five years the amount being reported would be removed. He told her to return to her home and continue to pay her first and second loan to USDA and enjoy her [h]ome. Plaintiff did not pursue the manner [sic] any further as [BA's] agent assured her the [DOT] was uncollectable and her credit would be cleared up in five years." [*Id.*].

At some point between 2007 and 2012, it appears that Marin Conveyancing assigned the DOT to Mortgage Electronic Registration Systems Inc. ("MERS").[5] [*See id.* Ex. 5]. Then, in February 2012, MERS assigned the DOT back to Greenpoint. [*Id.*]. Seven months later, RTR contacted Suarez about her outstanding debt. [SAC ¶ 19]. Suarez did not respond, believing

---

[4] Suarez also alleges that she believes Capital One purchased Greenpoint and thus acquired the DOT. [SAC ¶ 10]. However, based on the exhibits attached to the SAC, it appears that Countrywide never owned the DOT. [*See id.* Exs. 4, 5].

[5] Suarez alleges that in 2008, BA owned the DOT because it purchased Countrywide. [SAC ¶ 10]. However, based on the exhibits attached to the SAC, it appears neither BA nor Countrywide owned the DOT. [*See id.* Exs. 4, 5].

-3-

RTR was a scam entity because "she had no agreement signed with RTR." [*Id.*]. In December 2017, Greenpoint assigned the DOT to MERS.[6] [*Id.* Ex. 6].

In January 2022, RTR began calling and sending letters to Suarez regarding the February 2022 maturity date on the HELOC. [*Id.* ¶ 19]. Several months later, Suarez received an intent-to-foreclose letter. [*Id.*]. On July 21, 2022, MERS assigned the DOT to Marin Conveyancing. [*Id.* Ex. 8]. Sometime after this, it appears that Marin Conveyancing assigned the DOT to ZBS Law, LLP ("ZBS Law"). [*See* Exs. 1, 8]. Less than a month later, ZBS Law recorded a Notice of Default and Election to Sell Under Deed of Trust. [SAC ¶ 35]. In September 2022, Suarez asked RTR to provide proof of the outstanding debt to no avail. [*Id.* ¶ 20]. In March 2023, ZBS Law foreclosed on Suarez's home and later sold it to Defendant Yakte Properties, LLC ("Yakte").[7] [*Id.* Ex. 1]. ZBS Law conveyed title via the Trustee's Deed Upon Sale to Yakte. [*Id.* Ex. 1].

//
//
//

---

[6] Suarez alleges that in May 2017, Greenpoint assigned the DOT to RTR. [SAC ¶ 16]. However, exhibits attached to the SAC show that as of February 2017, MERS was the owner of the DOT until July 2022. [*See id.* Exs. 6, 8].

[7] Suarez alleges RTR sold her home to Yakte but Exhibit 1 clearly contradicts this allegation. [*See* SAC Ex. 1].

In an effort to provide some visual clarity about this chain of events, the Court offers the following illustration:



In the SAC, Suarez asserts numerous claims against RTR for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; (4) fraud; (5) extortion; (6) quiet title; and (7) cancellation of cloud on title.  Suarez asserts the same claims against Yakte for purchasing the property.  RTR and Yakte now move to dismiss these claims under Federal Rule of Civil Procedure 12(b)(6).

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in a complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal of a claim is proper under Rule 12(b)(6) when a plaintiff "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories."  *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).  To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true all material factual allegations and draw all reasonable inferences in the non-moving party's favor. *Doe*, 419 F.3d at 1062. A court need not accept, however, "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). When reviewing a Rule 12(b)(6) motion, a court must consider the complaint in its entirety, including any attached exhibits. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). If a complaint fails to state a plausible claim, a court should freely grant leave to amend under Federal Rule of Civil Procedure 15(a)(2) even if such a request was not made, unless amendment would be futile. *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012).

### III. DISCUSSION

RTR and Yakte move to dismiss the claims asserted against them for several reasons. The Court does not address the parties' dispute about the statute of limitations because this argument only applies as to RTR, and as discussed below, all claims against RTR are dismissed.

**A.  Breach of Contract Claim and Breach of the Implied Covenant of Good Faith and Fair Dealing Claim (Claims 1 and 2)**

Suarez asserts a breach of contract claim and a breach of the implied covenant of good faith and fair dealing claim against RTR and Yakte. To prevail on either of these claims, Suarez must allege at a bare minimum the existence of a contract. *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (stating existence of a contract is a necessary element for a breach of contract claim); *Smith v. City & Cnty. of S.F.*, 275 Cal. Rptr. 17, 23 (Cal. Ct. App. 1990) ("The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties, since the covenant is an implied term in the contract.").

Where a principal is disclosed, an agent cannot be held liable for breach of a contract to which it is not a party. *See Filippo Indus., Inc. v. Sun Ins. Co. of N.Y.*, 88 Cal. Rptr. 2d 881, 891 (Cal. Ct. App. 1999).

These claims as asserted against RTR are based on the allegations that it was contractually obligated to provide Suarez with monthly billing statements of her outstanding debt because it was acting as an agent of Greenpoint and BA. [SAC ¶¶ 1-21]. RTR argues these claims must be dismissed because Suarez fails to allege, among other things, the existence of a contract between her and RTR. RTR specifically contends that it never assumed any contractual obligations under the HELOC agreement because it was never assigned the DOT.

The Court agrees. The exhibits to the SAC clearly contradict Suarez's allegations that RTR owned the DOT. Suarez entered into the HELOC agreement with Greenpoint in February 2007, [SAC Ex. 1], and Marin Conveyancing was designated as the trustee of the DOT, [*id.* Ex. 4 at 2]. Between 2007 and 2012, Marin Conveyancing assigned the DOT to MERS. [*See id.* Ex. 5]. In February 2012, MERS assigned the DOT to Greenpoint. [*Id.* Ex. 5]. In December 2017, Greenpoint assigned the DOT to MERS. [*Id.* Ex. 6]. In July 2022, MERS assigned the DOT back to Marin Conveyancing. [*Id.* Ex. 8]. At some point before July 2022, Marin Conveyancing assigned the DOT to ZBS Law. [*See id.* Exs. 1, 8]. Between July 2022 and April 2023, ZBS Law foreclosed on Suarez's home, and on April 5, 2023, ZBS Law conveyed title to Suarez's home to Yakte. [*Id.* Ex. 1]. Thus, even assuming Suarez's legal premise is correct—that is, any entity that was subsequently assigned the DOT also assumed any contractual obligations under the original HELOC agreement—no contract existed between RTR and Suarez because the former was never assigned the DOT. And contrary to Suarez's assertion, RTR cannot be held liable as an agent for any contractual breaches perpetrated by any of the

pre-foreclosure assignees of the DOT because they were all disclosed principals in publicly, available county records.

As for Yakte, the SAC is unclear about what contract exists between Suarez and Yakte, let alone the terms of the contract. All she alleges is that Yakte purchased the property from Marin Conveyancing, its alleged agent, despite knowing there was a *lis pendens*. [SAC ¶ 21]. Yakte argues these claims must be dismissed because, even if Yakte was the principal, it was never a party to the original HELOC agreement. The Court agrees. To clarify, Yakte purchased Suarez's home from ZBS Law, not Marin Conveyancing. Regardless, Suarez offers no legal authority for the proposition that a purchaser of a foreclosed property is a party to a contract that was entered into before foreclosure between the lender and the borrower. The Court declines to adopt such a theory of liability here.

Accordingly, the motion to dismiss the breach of contract claim and breach of the implied covenant of good faith and fair dealing claim against RTR and Yakte is **GRANTED**.

### B. Promissory Estoppel (Claim 3)

Suarez asserts a promissory estoppel claim against RTR and Yakte. To state a claim for promissory estoppel, Suarez must allege, among other things, that RTR and Yakte made a clear and unambiguous promise to her. *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 311 Cal. Rptr. 3d 564, 591 (Cal. Ct. App. 2023).

As to RTR, Suarez alleges that because it was acting as an agent of BA, the former is bound by the latter's purported promise that she need not make payments because the debt was uncollectable. [SAC ¶ 30]. Suarez further alleges she detrimentally relied on this purported promise by not investigating the outstanding debt any further and was damaged because they foreclosed on

and sold her home. [*Id.* ¶ 31]. RTR moves to dismiss Suarez's promissory estoppel claim, arguing RTR never made this promise to Suarez.

The Court agrees. As Suarez's own allegations confirm, it was BA—not RTR—who made this purported clear and unambiguous promise to her. Suarez persists that RTR is bound by BA's alleged promise because it later assumed both the benefits and obligations when it owned the DOT in 2017. This argument is flawed. To begin, BA never owned the DOT to Suarez's home. But assuming that fact is true, and that Suarez's legal premise is correct—that is, a subsequent trustee of the DOT can be bound by an unwritten, oral promise from a prior trustee of the DOT—the attached exhibits show that RTR never owned the DOT. *See* discussion *supra* Section III.A. Thus, RTR cannot be held liable for any purported promise BA made to Suarez.

Suarez's promissory estoppel claim is even more tenuous as it relates to Yakte. The SAC alleges Yakte is liable for BA's alleged promise because it now owns the DOT. [SAC ¶ 31]. In other words, the legal theory Suarez offers here is that a purchaser-trustee of a foreclosed property is liable to the borrower for an unwritten, oral promise from a purported prior trustee of the DOT that was made before foreclosure even though the purchaser did not make the clear and unambiguous promise itself. This Court's research reveals no legal authority that would support this theory, and Suarez offers none in her opposition.

Accordingly, the motion to dismiss the promissory estoppel claim against RTR and Yakte is **GRANTED**.

C.   Fraud (Claim 3)

Suarez asserts a fraud claim against RTR and Yakte. To state a fraud claim under California law, Suarez must allege that RTR and Yakte made a misrepresentation knowing it was false with the intention to defraud Suarez and which caused her damage. *See Beckwith v. Dahl*, 141 Cal. Rptr. 3d 142, 159,

161 (Cal. Ct. App. 2012); *Lazar v. Superior Ct.*, 909 P.2d 981, 984 (Cal. 1996). Causation is comprised of two distinct causal components: First, Suarez must allege she actually and justifiably relied on RTR's alleged misrepresentation which *caused* her to take a different course of action; second, she must allege that her different course of action caused her damage. *Beckwith*, 141 Cal. Rptr. 3d at 161. The reasonableness of Suarez's reliance is judged by reference to her knowledge and experience. *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 68 Cal. Rptr. 3d 828, 856 (Cal. Ct. App. 2007). In asserting a fraud claim, Suarez must meet the heightened pleading standards under Federal Rule of Civil Procedure 9(b) and must "state with particularity the circumstances constituting fraud."[8] Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

As to RTR, the SAC is unclear about what fraudulent misrepresentation RTR made. In her opposition, Suarez clarifies that her fraud claim is based on RTR's alleged false representation "that [Suarez] owed [Greenpoint] over $146,335.76 on February 15, 2022[,] and $275,692.11 total in February of 2023." [Opp'n at 18 (citing SAC ¶¶ 19-21)]. RTR argues this claim must be

---

[8] Suarez claims that "the heighten[ed] standard for fraud in federal cases does not apply to state law claims." [Opp. at 18]. Suarez is unquestionably wrong. "It is well-settled that the Federal Rules of Civil Procedure apply in federal court, 'irrespective of . . . whether the substantive law at issue is state or federal.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (quoting *Vess*, 317 F.3d at 1102). Even if Suarez was correct—which, to reiterate, she is not—California pleading standards for fraud claims imposes an identical heightened pleading standard. *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 875 (Cal. Ct. App. 2014) ("Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.") (quotation marks omitted); *Beckwith*, 141 Cal. Rptr. 3d at 159 ("Each element [of fraud] must be alleged with particularity.").

1   dismissed because Suarez cannot claim she justifiably relied on a
2   misrepresentation she claims she knew was false.
3        The Court agrees, but also finds that Suarez completely fails to
4   adequately allege causation.  Suarez does not allege facts that would explain
5   *how* she *actually relied* on RTR's alleged misrepresentation, and she fails to
6   allege facts to show *how* her presumed actual reliance was *justifiable* if she
7   knew the falsity of RTR's representation.  *See also Agredano v. Cap. One, Nat'l*
8   *Ass'n*, No. 18-cv-06865-YGR, 2019 WL 1570249, at *9 (N.D. Cal. Apr. 11,
9   2019) (dismissing fraud claim where borrower failed to allege how he actually
10  relied on any misrepresentations, how that reliance was justifiable, and how the
11  claimed damages resulted from his reliance on the misrepresentation).  Nor are
12  there allegations that RTR's misrepresentation caused her to take a different
13  course of action which caused the foreclosure and sale of her home.  Suarez thus
14  fails to state a fraud claim against RTR.
15       As for Yakte, the SAC is devoid of any allegations that Yakte made any
16  representations to her.  [*See* SAC ¶¶ 27-31].  In her opposition, however, Suarez
17  argues that "[Yakte] is vicariously liable for the acts of its agent [Marin
18  Conveyancing] and [Marin Conveyancing] agent RTR."  [Opp. at 18].  Suarez
19  essentially advocates for a novel form of horizontal vicarious liability in
20  foreclosure cases—that is, the purchaser-principal can be liable for non-trustee
21  principal's misconduct merely because they share a common trustee-agent.
22  //
23  //
24  //
25
26
27
28

A diagram helps illustrate Suarez's theory:



Suarez, however, offers no legal authority for this novel legal proposition, and the Court declines to adopt Suarez's theory of horizontal vicarious liability. But even assuming Suarez's legal theory is sensible—which it is not—this theory would rise and fall with its fraud claim against RTR. And because she fails to adequately allege a fraud claim against RTR, she likewise fails to allege a fraud claim against Yakte.

Accordingly, the motion to dismiss the fraud claim against RTR and Yakte is **GRANTED**.

**D. Extortion (Claim 3)**

Suarez asserts a civil extortion claim against RTR and Yakte. Suarez seems to assume she has an implied cause of action for extortion under California Penal Code § 523.[9] [*See* Opp. at 19 (citing *Monex Deposit Co. v.*

---

[9] The Court is skeptical California Penal Code § 523 provides an implied cause of action for extortion, and there is no clear consensus among the federal district courts and California state courts about whether such an implied claim exists. *Compare Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1136-37 (C.D. Cal. 2009) (finding implied cause of action for extortion under Section 523); *Schiffman v. Knoll*, No. B286311, 2019 WL 1254152, at *3 (Cal. Ct. App. 2019) (same) (unpublished), *with Intermarketing Media, LLC v. Barlow*, No. 8:20-CV-00889-JLS (DFMx), 2021 WL 5990190, at *12 n.10 (C.D. Cal.

*Gilliam*, 666 F. Supp. 2d 1135, 1137 (C.D. Cal. Sept. 4, 2009)]. Assuming Suarez is correct, the relevant subsection here is California Penal Code § 523(a). Section 523(a) requires that Suarez allege that RTR *obtained her home* by sending a letter threatening (1) to do any unlawful injury to Suarez or her property; (2) threatened her or a relative of a crime; (3) expose or impute a deformity, disgrace, or crime; (4) expose Suarez's secret; or (5) to report her immigration status. Cal. Penal Code § 523; *see also id.* § 519. She must also allege that RTR intended to extort Suarez's property. Cal. Penal Code § 523.

Suarez fails to state a civil extortion claim against RTR or Yakte. As discussed above in Section III.A, RTR never obtained title to Suarez's property upon foreclosure. And there are no allegations that Yakte sent any threatening letters to Suarez as defined under California Penal Code § 519.

Accordingly, the motion to dismiss the extortion claim against RTR and Yakte is **GRANTED**.

E. **Quiet Title (Claim 4)**

Suarez asserts a quiet title claim against RTR and Yakte. The purpose of a quiet title claim is to stop "'the mouth of a person who has asserted or is asserting a claim to the plaintiff's property.'" *Water for Citizens of Weed Cal. V. Churchwell White LLP*, 304 Cal. Rptr. 3d 613, 620 (Cal. Ct. App. 2023) (quoting *Castro v. Barry*, 21 P. 946, 947 (Cal. 1889)). To state a claim for quiet title, Suarez must allege in a verified complaint (1) a description of the property that is subject of the action; (2) Suarez's title and her basis for the title; (3) any adverse claims to Suarez's title; (4) the date as of which the determination is sought; and (5) a prayer for the determination of Suarez's title against the adverse claims. Cal. Civ. Proc. Code § 761.020(a)-(e).

---

May 4, 2021) (declining to find implied cause of action for extortion under Section 523).

As an initial matter, while Suarez asserts this claim against RTR, as discussed above in Section III.A, RTR was never and is not the current assignee of the DOT to Suarez's home. For this reason alone, Suarez cannot state a quiet title claim against RTR. *See Friends of the Trails v. Blasius*, 93 Cal. Rptr. 2d 193, 206 (Cal. Ct. App. Feb. 28, 2000) ("there is no entitlement to a judgment quieting title insofar as there is no antagonistic property interest"); *see also Aldana v. Bank of Am., N.A.*, CV 14-1646-GHK (FFMx), 2014 WL 12577145, at *4 (C.D. Cal. May 2, 2014) (dismissing quiet title claim against loan servicer because it did not "ha[ve] an adverse claim to the title, as the Property was sold to a third-party purchaser at the trustee's sale").

Moving on to Yakte, Suarez seeks to quiet Yakte's title to her home based on allegations that the foreclosure sale arose from the prior trustee's fraudulent acts. [*See* SAC ¶¶ 32-38]. Yakte argues this claim must be dismissed because a quiet title claim cannot be asserted until she has paid the outstanding debt under the HELOC agreement. The Court agrees. Under California law, "a borrower may not assert quiet title without first paying the outstanding debt on the property." *Kimball v. BAC Home Loans Servicing, LP*, No. 10-CV-05670-LHK, 2011 WL 577418, at *2 (N.D. Cal. Feb. 9, 2011) (citing *Miller v. Provost*, 33 Cal. Rptr. 2d 288, 289-90 (Cal. Ct. App. July 25, 1994)). Here, Suarez does not allege she has paid or is able to pay the entire outstanding debt, nor does Suarez allege that she has paid the initial advance of $12,983.33 that she concedes she owes to Greenpoint.

Accordingly, the motion to dismiss the quiet title claim against RTR and Yakte is **GRANTED**.

**F. Cancellation of Cloud on Title (Claim 5)**

Suarez asserts a claim to cancel two documents: (1) the Trustee's Deed Upon Sale and (2) the Notice of Default and Election to Sell Under Deed of Trust. [SAC ¶¶ 40-42]. Suarez asserts this claim against both RTR and Yakte.

A claim to cancel cloud on title is distinct from a claim to quiet title. *Deutsche Bank Nat'l Trust Co. v. Pyle*, 220 Cal. Rptr. 3d 691, 699 (Cal. Ct. App. 2017). A claim to cancel cloud on title is "directed at a particular instrument." *Robin v. Crowell*, 270 Cal. Rptr. 3d 25, 740 (Cal. Ct. App. Oct. 8, 2020). To state a claim to cancel an instrument, Suarez must allege "(1) the instrument is void or voidable due to, for example, fraud; and (2) there is a reasonable apprehension of serious injury including pecuniary loss or the prejudicial alteration of one's position." *U.S. Bank Nat'l Ass'n v. Naifeh*, 205 Cal. Rptr. 3d 120, 128 (Cal. Ct. App. 2016).

As to RTR, the exhibits attached to the SAC show that RTR never owned the Trustee's Deed Upon Sale or the Notice of Default and Election to Sell Under Deed of Trust. Moreover, as discussed above in Section III.A, RTR never owned the DOT. Because RTR did not have and has no interest in Suarez's home, she cannot state a claim to cancel the cloud on title against RTR. *See also Chao Fu, Inc. v. Chen*, 141 Cal. Rptr. 3d 381, 389 (Cal. Ct. App. 2012) ("It follows that absent an interest in the property, a party has no standing to ask the court to quiet title in the property or to obtain damages for the cloud on title. An action to cancel a trustee's deed or other instrument purportedly transferring title is no different.").

As to Yakte, the SAC seems to allege that Suarez is entitled to cancel Yakte's Trustee's Deed Upon Sale because it is voidable. [SAC ¶¶ 39-42; *see also id.* ¶¶ 35-37]. This claim seems to be based on the theory that Yakte had no right to purchase her home because it was foreclosed on through fraudulent acts. [*Id.*]. Yakte argues this claim must be dismissed because Suarez has not stated a viable quiet title claim. In other words, Yakte argues this claim rises and falls with the quiet title claim. Regrettably, Yakte offers no legal authority for this proposition.

The Court on its own nevertheless concludes that Suarez fails to state a claim for cancellation of cloud on title. An indispensable element to this claim is that Suarez allege the Trustee's Deed Upon Sale is voidable because of fraud. *See Naifeh*, 205 Cal. Rptr. 3d at 128. But as discussed above in Section III.C, she fails to allege that prior trustees' acts in this case were fraudulent.

Accordingly, the motion to dismiss this claim against RTR and Yakte is **GRANTED**.

## IV.   LEAVE TO AMEND

RTR and Yakte request that the Court deny Suarez leave to amend the SAC. The Court agrees. This is Suarez's third iteration of the complaint. Even after extensive discussions with RTR and Yakte about the deficiencies pertaining to the complaint, she still fails to allege sufficient facts to state any of her claims. Moreover, as discussed thoroughly above, the attached exhibits to the SAC make it apparent that there are no set of facts that could cure these defects. It is noteworthy, Suarez is silent on this issue in her opposition, implicitly conceding that leave to amend should not be granted. For these reasons, Suarez is **DENIED** leave to amend.

## V.   CONCLUSION

For the above reasons, the motion to dismiss is **GRANTED**, the SAC is **DISMISSED WITH PREJUDICE** in its entirety, and Suarez is **DENIED** leave to amend. A judgment will be issued separately.

**IT IS SO ORDERED.**

DATED: October 19, 2023

SUNSHINE S. SYKES
United States District Judge